IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

IN RE:                          §         CASE NO.   18-52772-RBK
ROCK SPRINGS ENERGY GROUP, LLC, §
DEBTOR                          §         CHAPTER    11

**ROCK SPRINGS ENERGY GROUP, LLC'S PLAN OF REORGANIZATION**

ROCK SPRINGS ENERGY GROUP, LLC proposes the following Plan of Reorganization pursuant to the provisions of Chapter 11 of the Bankruptcy Code and Rule 2015(b) of the Federal Rules of Bankruptcy Procedure:

ARTICLE I

Definitions

For the purposes of this Plan of Reorganization, the following terms shall have the following meanings, equally applicable to the singular and plural forms or the gender of the terms defined, unless the context clearly requires otherwise. These terms shall be designated, where such definition is applicable, with capital letters and those definitions shall be enforceable as terms of this Plan in conjunction with the respective matters to which they reference or define:

1.01.   Administrative Claim:   means a request for payment of an administrative expense in the case under §503(b) that, if allowable, would be entitled to priority under §507(a)(1).

1.02.    <u>Allowed Claim or Interest</u>:   means any claim against, or interest in, the Debtor, proof of which was filed on or before the Bar Date or pursuant to Section 2.04.02 herein or, if no proof of claim or interest has been filed, a claim or interest that was scheduled by the Debtor on the Debtor's schedules as amended from time to time as liquidated in amount and not disputed or contingent or disputed in the disclosure statement or this Plan and, in either case, a claim or interest as to which no objection has been filed or will be filed; or if subject to an objection or other proceeding considered by the Court, a claim or interest that has been determined by Final Order of the Court.

1.03.    <u>Allowed Secured Claim(s)</u>:  means an Allowed Claim which is secured by a valid, duly perfected voluntary or involuntary lien on, or a security interest in, property in which the Debtor has an interest (including property of the estate), or which is subject to setoff under Bankruptcy Code §553, to the extent of the lesser of:  (i) the value of such property securing the Allowed Secured Claim; or (ii) the amount of such Allowed Claim which is secured, as the case may be, including any election made pursuant to §1111 of the Bankruptcy Code.

1.04.    <u>Allowed Unsecured Claims</u>:   means an Unsecured Claim against Debtor:  (a) for which a proof of claim has been

timely filed with the Court by the claims Bar Date, or, with leave of Court and without objection by any party in interest, late filed, and as to which neither Debtor nor any party in interest files an objection or as to which the claim is allowed by Final Order of the court, or (b) scheduled in the Schedules, as may be amended, prepared and filed with the Court pursuant to Bankruptcy Rule 1007(b) and not listed as disputed, contingent or unliquidated as to amount, and as to which no objection to the allowance thereof has been interposed pursuant to the terms of this Plan, or as to which any such objection has been determined by an order or judgment which is no longer subject to appeal or certiorari proceeding and as to which no appeal or certiorari proceeding is pending. This category includes all claims deemed unsecured pursuant to §506(a) of the Code.

1.05.    <u>Bankruptcy Code or "Code"</u>:  means Title 11 of the United States Code as in effect on the Petition Date, and all amendments thereto and in effect on or before the confirmation date, or thereafter only if specifically provided retroactive by any such amendment and only to the extent such amendment may be valid and constitutional, and does not materially and adversely affect the interest of the Debtor, creditors or any other party in interest.

1.06.    <u>Bar Date</u>:  means April 8, 2019 for all creditors except a governmental agency or entity, being the date that was

fixed by the Court for filing claims in both Chapter 11 proceedings which are the subject of this Plan pursuant to BANKR. R. P. 3003(b); provided, however, if the Court extends the time for filing any given claim, the date so set shall be the Bar Date with respect to that claim, but only with respect to such claim.

1.06A.   BHI:  means B H, Inc., a Utah corporation, which (i) has an Allowed Secured Claim in this case in the amount set forth in Claim No. 1 on file in this case, to which the Debtor's objection was overruled by Court order entered April 11, 2019 and which is now a Final Order and (2) is a Judgement Creditor and Secured Creditor.

1.06B.   BHI Settlement:  means the Compromise and Settlement Agreement among the Debtor, BHI, and others set forth in **Exhibit "A"** attached hereto and incorporated herein by reference.

1.07.   Claim(s):  means a "claim" alleged or which is, in fact, due or assertible against the Debtor as defined in §101(4) of the Code and includes those claims which are allowed and all those claims which are not yet due, or which are unmatured, contingent and otherwise unliquidated.

1.08.   Class or Classification:  means the particular Class designated in this Plan pursuant to Bankruptcy Codes §§1122 and 1129 of the Code into which Creditor's Allowed Claims

may be included, as provided in this Plan, including classification for voting, for distributions and for impairment.

1.09.   ROCK SPRINGS ENERGY GROUP, LLC, Case:  means the above captioned Chapter 11 Bankruptcy case commenced on November 28, 2018 as a Chapter 11 proceeding, the date of the filing of the Voluntary Petition.

1.10.   Confirmation:  means entry by the Court of an Order Confirming the Plan at or after a hearing pursuant to §1129.

1.11.   Confirmation Date:  means the date of Confirmation.

1.11A   Construcciones:  means Construcciones E Instalaciones Modernas S. A., de C.V.I.

1.12.   Court:  means United States Bankruptcy Court for the Western District of Texas, San Antonio Division.

1.13.   Creditor(s):  means all persons or entities having Claims for debts, liabilities and demands of any character whatsoever, as defined in §101(4)of the Code, including, but not limited to, future contingent Claims for unmatured potential liability of Claims of the United States Government and any agency or department thereof, and any other governmental authority, and whether or not the Creditor has an Allowed Claim.

1.14.   Debtor:  means ROCK SPRINGS ENERGY GROUP, LLC, a

Delaware limited liability company, the Debtor, in its proceedings under Chapter 11 of the Code.

1.15.    <u>Distribution Date</u>:  means the date or dates upon which interim distributions provided under this Plan are to be made.

1.16.    <u>Effective Date</u>:  means the date upon which confirmation becomes a Final Order.

1.17.    <u>Estate</u>:  means the bankruptcy estate of the Debtor created upon filing this case.

1.18.    <u>Executory Contract(s)</u>:  means any contract found to be of the nature referred to in §365 of the Code as an Executory Contract, which requires assumption and/or rejection by the Debtor.

1.19.    <u>Exhibits</u>:  means those items (i) attached to the Plan and incorporated herein by reference; or (ii) attached to the Approved Disclosure Statement and incorporated therein by reference; or (iii) attached to the Order Confirming the Plan and incorporated therein by reference.

1.20.    <u>Final Order or Final Judgment</u>:  means any Order of the Court which is conclusive of all matters adjudicated therein, which is in full force and effect because the Final Order has not been:  (i) appealed, is not an allowed appeal or is denied review by certiorari or otherwise; or (ii) has not been reversed or modified; or (iii) which is not the subject of

any pending appeal, review, rehearing, and is in all respects final and nonappealable.

1.21. <u>Initial Distribution Date</u>: means the date upon which the first distribution under the Plan shall be made. The Initial Distribution Date shall be that date which the Debtor choose in its sole discretion; however, it shall be no later than thirty (30) days after Confirmation. Notwithstanding the preceding sentence BHI is to be paid by wire transfer the amount set forth in Section 1 of the BHI Settlement upon entry of the Order Confirming the Plan and if such order is entered after the daily deadline for wire transfers, on a Saturday, Sunday, or federal holiday, payment to BHI is be paid by wire transfer on the next business day by noon San Antonio, Texas time.

1.22. <u>Judgment Creditor(s) or Judgment Claim(s)</u>: means a Creditor whose Claim arose as a result of the entry of a judgment prior to the Petition Date by a state or federal court of competent jurisdiction in a proceeding involving the Debtor.

1.23. <u>Order Confirming the Plan</u>: means the Order of the Court pursuant to §1129 of the Court, finding that the Plan meets the requirements of Chapter 11 of the Code and is entitled to Confirmation, and which may contain such other provisions, orders, findings, modifications and judgments which by the terms of this Plan or the Code are appropriate and necessary to carry forward this Plan to substantial consummation, including the Exhibits (as may be amended or modified).

1.24.    Penalty and Interest:   means any statutorily prescribed penalty or interest which has accrued because of Debtor's failure to pay a tax imposed or to file a tax return with a governmental entity.

1.25.    Petition:  means the voluntary petition filed by Debtor under §301 of the Code commencing this case.

1.26.    Petition Date:  means November 28, 2018, the date the case was filed under Chapter 11 of the Code.

1.27.    Plan:   means this Plan of Reorganization, including any modifications, amendments or corrections made in accordance herewith under the provisions of the Code.

1.28.    Priority Claim:  means any Claim, other than a Tax Claim or an Administrative Claim entitled to priority under §507(a).

1.29.    Pro Rata or Pro Rata Share:  means the amount which is the result of multiplying the net proceeds or total proposed dividend owing to a named Class of Creditors pursuant to the terms of this Plan, by that fraction in which the numerator is the allowed amount of the particular Creditor's Claim of the named Class and the denominator is the allowed amount of all the Creditor's Allowed Claims of the named Class.

1.30.    Professional Fees:  means the Allowed Claims for, or those charged by, attorneys, accountants, appraisers or other

professionals and reimbursement of expenses reasonably incurred in rendering such professional services which are:

(a) allowed pursuant to the Code and entitled to priority status in priority to or as Administrative Expenses Claims pursuant to Code §§ 327, 330, 331, 503(b)(3)(D), 507(a)(1), 1102, 1103; and/or

(b) allowed under the Plan after the Effective Date for services rendered after the Effective Date when approved by the Court, if necessary, and only to the extent reasonable under existing case law either at law or in equity.

1.31. <u>Revested Debtor</u>: means ROCK SPRINGS ENERGY GROUP, LLC, a Delaware limited liability company, as revested with property of its respective estate pursuant to §1141(b).

1.32. <u>Rejection Claim</u>: means any Claim arising by reason of rejection by the Debtor of a contract or lease pursuant to §365 or §1123(b)(2).

1.32A. <u>Schedules</u>: means the Schedules of the Debtor's assets and liabilities filed with the Court in this case, as amended from time to time.

1.33. <u>Secured Claim</u>: means any Allowed Claim secured by property of the Debtor, to the extent of the value of such collateral.

1.35. <u>Secured Creditor(s)</u>: means a Creditor holding an Allowed Secured Claim, and may include Allowed Claims evidenced by valid Judgment Liens, Statutory Liens, other involuntary liens or mortgages, and all voluntary liens or mortgages against

the property of the estate or assigned assets.

1.35.    <u>Settled Claim(s), Settlement(s) or Settle</u>:  means
the Allowed Claims resulting from either the terms of agreements
regarding disputed Claims reached by and between:

(a)   the respective Creditors having disputed,
      unliquidated, contingent or Non-Allowed Claims; and

(b)   the Debtor which fully liquidates and renders
      undisputed any Claim which is thereafter deemed an
      Allowed Claim.

1.36.    <u>Tax Claim</u>:  means any Claim of governmental units
for taxes as described in §507(a)(7) of the Code, excluding
penalty and interest on such tax.

1.37.    <u>Unsecured Claim</u>:  means any Claim that is not a
Secured Claim, Administrative Claim, Priority Claim or Tax
Claim.

1.38.    <u>Unsecured Creditor(s)</u>:   means all Creditors
holding Claims against the Debtor other than an Allowed Secured
Claim.

<u>ARTICLE II</u>

<u>Certain General Terms and Conditions</u>

2.01.    <u>Satisfaction of all Claims</u>:  Various types of
Claims are defined in this Plan.  This Plan is intended to and
shall satisfy, in the manner specified herein, all claims
against Debtor of whatever character, whether or not contingent
or liquidated, and whether or not Allowed Claims.  ONLY ALLOWED

CLAIMS AND INTERESTS WILL RECEIVE THE TREATMENT AND DISTRIBUTIONS SPECIFIED BY THE PLAN. EXCEPT FOR (1) RIGHTS WHICH BHI AND THE BHI RELEASEES (AS DEFINED IN THE BHI SETTLEMENT) HAVE UNDER THE BHI SETTLEMENT AND (2) DUTIES AND OBLIGATIONS OF THE DEBTOR AND OTHERS TO BHI AND THE BHI RELEASEES (AS DEFINED IN THE SETTLEMENT AGRREMENT) UNDER THE BHI SETTLEMENT, UPON THE EFFECTIVE DATE, THE DEBTOR SHALL BE RELEASED AND DISCHARGED FROM ALL DEBTS AND LIABILITIES AND DEBTOR SHALL OWN ALL OF THEIR RESPECTIVE PROPERTY SUBJECT ONLY TO THE CLAIMS AND INTERESTS OF CREDITORS, IF ANY, AND LIENS AND ENCUMBRANCES, IF ANY, AS SPECIFICALLY SET FORTH IN THE PLAN.

2.02.  <u>Securities Laws</u>: Any satisfaction provided to a Creditor pursuant to this Plan which is or may be deemed to be a security is exempt from registration under certain state and federal securities laws pursuant to §1145. Such exemption does not extend to most subsequent transfers of such interests by "underwriters" as that term is defined in §1145.

2.03.  <u>Disbursing Agent</u>: Except for the sum to be paid by the Debtor by wire transfer to BHI under Section 1 of the BHI Settlement, which sum shall be paid by wire transferred by the Debtor as set forth in the BHI Settlement, PAOLA SCHROEDER, the Authorized Representative of Debtor-in-Possession, shall serve as disbursing agent for all distributions under the Plan PAOLA SCHROEDER may appoint such transfer or other agents as it deems

necessary and reasonable to assist in making distributions required by the Plan.

    2.04.    <u>Time for Filing Claims</u>:

        2.04.01   All Claims assertible and arising prior to the Petition Date shall have been filed with the Court by the Bar Date. The Schedules are on file at the office of the Clerk of the Court and are open for inspection during regular business hours at the office of the Clerk of the Court, 615 E. Houston St., San Antonio, Texas 78205 and are available through the Court's electronic PACER filing system. Claims filed pursuant to assumption or rejection of Executory Contracts should also refer to Section VII of the Plan for special requirements regarding their Claims. Debtor's failure to designate a Claim in the schedules as being disputed, contingent or unliquidated, does not constitute an admission that such claim is not subject to objection, provided, however, that BHI's Allowed Secured Claim has been finally resolved by orders of the Court entered on April 11, 2019 and April 12, 2019. Except for BHI's Allowed Secured Claim, the Debtor reserves the right to dispute, or assert offsets or defenses, to any Claims reflected in its Schedules as to amount, liability or status. This statement is not intended by the Debtor to mean that all Claims shown in the Schedules are disputed, contingent or unliquidated, thereby requiring all Creditors to file Claims. It is merely included

to prevent any Creditor from seeking to use the Schedules as an admission by Debtor as to the amount of liability in a Claim objection or other proceeding. If a Creditor's Claim is scheduled without a disputed, contingent or unliquidated notation, that Creditor need not file a Claim unless that Creditor disagrees with the amount scheduled. If the Debtor amends downward any Claim shown on the Schedules, those Claimants will be notified and will be given additional time as provided by the Bankruptcy Rules within which to file their Proofs of Claim, if they so desire.

2.04.02 All Administrative Claims assertible and arising during the Case shall be filed with the Clerk of the Court no later than ten (10) days prior to the first hearing on confirmation; provided, however, all Administrative Claims of the Case filed by professionals for compensation incurred prior to Confirmation under §330 of the Code shall be filed within ninety (90) days after the Confirmation Date. If these Claims are not filed on or before the respective deadlines, such Claims shall not be allowed, unless the Court has ordered otherwise or orders otherwise.

In addition, all requests for payment of Administrative Claims incurred after the confirmation of the Plan shall be filed with the Clerk of the Court prior to or simultaneously with the Debtor's application for Final Decree.

2.05.    Modifications to the Plan:  This Plan may be modified or corrected upon motion of the Debtor pursuant to §1127 of the Code and Bankruptcy Rule 3019 prior to Confirmation.  Modifications or corrections may be made without additional disclosure pursuant to §1125 of the Code provided that the Court finds that the modifications or corrections do not adversely affect any Claim or Interest or classes of Claims or Interests.  After the Confirmation Date, the Debtor, upon order of the Court and in accordance with §1127(b), may remedy any defect or omission or reconcile any inconsistencies in the Plan in such a manner as may be necessary to carry out the purposes and intent of the Plan.

2.06.    Valuation of BHI's Allowed Secured Claim:  BHI's Allowed Secured Claim shall be allowed as set forth in its Proof of Claim No. 1 filed with the Court and as determined by orders of the Court entered on April 11, 2019 and April 12, 2019. With approval of the Court, the Debtor has previously stipulated that BHI's claim shall be treated as a fully secured claim for the purposes of Section 506 of the Code. *See* Docket Entry No. 37 in this case.

## ARTICLE III

## Division of Creditors in the Classes

3.01.    Class 1: Claim of The Law Office of WILLIS & WILKINS, L.L.P. by James S. Wilkins, arising under §507(a)(1) of

the Bankruptcy Code up to $75,000.00; and fees due the United States Trustee. Class 1 is not impaired and is not entitled to vote on this Plan.

   3.02    Class 2:  Secured claim of the following:

B H, INC.                                    $6,300,000.00[1]
c/o Joseph S. Cohen
Of Counsel
Rosenthal Law Firm, PLLC
675 Bering Drive, Suite 150
Houston, Texas 77057


                                    **Total $6,300,000.00[2]**


   3.03    Class 3:  Unsecured claims of the following:

Advanced Magnetronics, LLC          (contingent) $24,000.00
230 West Second South St.
Salt Lake City UT 84101-0000

DR Griffin & Associates Inc.        (contingent) $15,106.33
1414 Elk St.
Rock Springs WY 82901-0000

Office of Ivan Ramirez, PLLC                     $1,000.00
P.O. Box 702086
San Antonio TX 78270-0000

Samuel Engineering, Inc.            (DISPUTED) $300,000.00
c/o Jeffrey Clay Rubell
Rubell Quillen, LLC
8501 Turnpike Dr., Suite 106
Westminster CO 80031-0000

Separation Process Systems, LLC     (Contingent)$200,000.00
5930 Par Four
Houston TX 77088-0000

---

[1] The actual allowed amount of BHI's Allowed Secured Claim exceeds $6,300,000.00.
[2] The actual allowed amount of BHI's Allowed Secured Claim exceeds $6,300,000.00.

Winn - Marion Companies            (contingent) $385,788.14
7084 S Revere Parkway
Englewood CO 80112-0000

**TOTAL $625,894.47**[3]

Advanced Magnetronics, LLC, DF Griffin & Associates, Inc., and Separation Process Systems, LLC are providing services to the Debtor on open account and the Debtor hereby expressly assumes those accounts and shall pay them in full upon completion of their work for the Debtor.

The disputed $300,000 Claim of Samuel Engineering, Inc. ("SEI") will not be allowed under the Plan as SEI's Claim was scheduled in the Debtor's initial and amended Schedules as disputed and SEI did not file a Proof of Claim prior to the Bar Date.

3.04      <u>Class 4</u>: Class 4 consists of the Allowed Unsecured Claim of Construcciones. Construcciones is an insider of the Debtor within the meaning of §101(31) of the Code. The claim of Construcciones shall be an Allowed Unsecured Claim but shall not be paid unless and until the Allowed Claims in Classes 1, 2, and 3 are paid in full.

3.05      <u>Class 5</u>: This class consists of the equity interests in the Debtor held by the following: ASCH Oil & Energy, Inc., ESCH Oil & Energy, Inc., JSCH Oil & Energy, Inc., PSCH Oil & Energy, Inc. and Eco Energy SM, LLC. These entities

shall retain their equity interests in the Debtor upon payment of Classes 1-4.

## ARTICLE IV

4.01.     Provision for Treatment of Classes of Creditors

The actual and necessary costs and expenses of administration of, and claims against, Debtor entitled to priority in accordance with §503(b) and §507(a)(1) of the Bankruptcy Code are not impaired. The holder of any Allowed Administrative Claim, except as otherwise provided in the Plan, shall be paid in full, without interest, in cash, on the effective date of the Plan, from estate funds or upon such other terms as may be agreed upon between the holder of any such claim and the Debtor. Such payment will include payment of all expenses incurred by the Debtor in the operation of the estates since the date of filing of this cases, together with authorized and allowed fees and expenses of professionals employed by the Debtor including attorneys, accountants and appraisers and the fees owing to the U.S. Trustee. Debtor estimates that there will be no administrative claims except as otherwise provided for in Class 1.

Class 1: The Class 1 claim of the WILLIS & WILKINS, L.L.P. by James S. Wilkins shall be paid from the retainer held by the

---

[3] *See* discussion below explaining by the disputed $300,000 claim of Samuel Engineering, Inc. is not included in this sum.

claim holder upon the Court's approval of the claim holder's fee, current cash reserves, and from future income of the Debtor; The Class 1 claim of the United States Trustee shall be paid as they become due. The reorganized Debtor shall be responsible for timely payment of fees incurred pursuant to 28 U.S.C. § 1930(a) (6). After confirmation, the reorganized Debtor shall file with the Court and serve on the United States Trustee a Quarterly Financial Report for each month (or portion thereof) the case remains open in a format prescribed by United States Trustee and provided to the Debtor by the United States Trustee. The Class 1 Creditor is deemed unimpaired by the Plan.

Class 2: The Class 2 Creditor is BHI whose Allowed Secured Claim was allowed by Order of the Court entered on April 11, 2019 and April 12, 2019 and, shall be paid as follows: The Class 2 Creditor, BH, INC., shall be paid the total sum, by agreement, $5,500,000.00 in cash under the terms of the BHI Settlement.

Class 3: The Class 3 Unsecured Creditor  SEI, in the amount of $300,000.00 is listed in the Schedules as disputed and it did not file a proof of claim by the Bar Date.. SEI will not be paid in this Plan. The Creditor, Office of Ivan Ramirez, PLLC, in the amount of $1,000.00 shall be paid thirty (30) days after the effective date of the Plan. The remaining unsecured Creditors, Advanced Magnetronics, LLC, ($24,000.00); DR Griffin & Associates Inc. ($15,106.33); Separation Process Systems, LLC

($200,000.00); and Winn-Marion Companies ($375,388.14) shall be paid upon completion of their respective contracts with the Debtor.

Class 4: The Class 4 Creditor, Construcciones, shall be paid in full only after the Allowed Claims in Classes 1, 2, and 3 are paid in full.

Class 5: The holders of equity interests in the Debtor shall retain their interests in the Debtor, which shall be subordinate to the creditors holding allowed claim in Classes 1, 2, 3, and 4.

ARTICLE V

Means for Execution of the Plan

5.01    The Plan shall constitute a motion under §364 of the Code for authority to obtain a $5,600,000.00 loan from Constucciones on the terms set forth in **Exhibit "B"** attached hereto and incorporated herein by reference.

5.01A    Upon Confirmation, the Debtor shall be authorized under §364 of the Code to borrow $5,6000,000.00 from Construcciones on the terms set forth in **Exhibit "B"** attached hereto and incorporated herein by reference, and only following timely payment to BHI of the sum of $5,500,000.00 as provided for in the BHI Settlement, the Debtor shall be authorized to grant to Construcciones a first priority lien on the Debtor's

crude oil distillery, storage tank facility and rail spur located in Rock Springs, Wyoming to secure payment of such loan. The funds evidencing the proceeds of such loan are currently on deposit in the trust account of the law firm of Willis & Wilkins, L.L.P., counsel to the Debtor.

5.01B.   <u>Distributions Under the Plan</u>: Except as provided in the BHI Settlement, the Debtor, in its sole discretion, will make those transfers and distributions required by this Plan from the revested Debtor's operations and upon the latter to occur of (i) the Confirmation Date, or (ii) as soon as practicable after a Final Order is entered allowing the holder's Claim or Interest, or (iii) as otherwise provided by order of the Court.  BHI shall be paid at the time and in the manner set forth in the BHI Settlement.  No distribution or transfer shall be made, however, which would result in any Creditor receiving more than is specifically provided for in this Plan.

5.01.01   <u>Manner of Cash Payments</u>:  Cash Payments to be made pursuant to the Plan shall be made by check drawn on a domestic bank from a domestic bank, except that BHI shall be paid on the Confirmation Date by wire transfer as provided in the BHI Settlement.

5.02.   <u>Cramdown</u>:  The Court may confirm the Plan even though fewer than all Classes of Creditors or Class of Interest holders have accepted the Plan.  In the event that any impaired

Class of Creditors or Class of Interest holders fails to accept the Plan by adequate vote as described in §§ 1126 and 1129(a), the Debtor may request the Court to confirm the Plan in accordance with §1129(b) of the Code.  Furthermore, to the extent the Plan does not embody certain provisions setting forth the circumstances apprehended by §1129(b), the Debtor may amend or modify the Plan to include such provisions should it become necessary to confirm the Plan under cramdown.  Notwithstanding any provision set forth herein, no modification of the Plan shall alter or change the treatment of the Class 2 Creditor without the consent of said Creditor.

5.03.    Unclaimed Distributions:  In the event that the Debtor, is unable to locate a holder of a Claim or Interest in order to make such distribution as herein provided, the revested Debtor shall hold such distribution for the benefit of such Claim or interest holder until all payments and transfers are made pursuant to this Plan, then such distributions or property shall be paid pro rata to Class 4 Creditors.

5.04.    Documentation:  The appropriate documentation for each transaction contemplated herein shall be in accordance with Article IV herein.

5.05.    Funding of Plan:  The distributions and payments provided for in the Plan shall be funded by the loan described in Section 6.01 above and thereafter by the revested Debtor's

future business operations and sale of assets, if necessary.

5.06.    <u>Controversy Concerning Impairment</u>:    In the event of a controversy as to whether any Creditor(s) or interest holders or Classes of Creditors are impaired under the Plan, the Bankruptcy Court shall, after notice and hearing, determine such controversy.   To the extent that the Court finds that a Class of Creditors or a Creditor is impaired where designated as unimpaired, that Creditor or Class of Creditors may file a vote, notwithstanding other provisions, at the time of Confirmation. If determined to be unimpaired, the Creditor or Class of Creditors shall be deemed to accept the Plan as provided in §1126(f).

ARTICLE VI

Executory Contracts and unexpired Leases

6.01.    The Debtor has no leases or executory contracts, except as previously disclosed in the plan.

6.02.    Rejection Claims must be filed with the United States Bankruptcy Clerk in San Antonio, Texas within one hundred eighty (180) days after Confirmation.   Any objections to such Rejection Claims shall be filed as provided in Article VIII.

6.03.    Each executory contract or unexpired lease assumed hereby by the Debtor shall be assumed as of the Confirmation Date.

<u>Article VII</u>

<u>Approval of BHI Settlement</u>

7.01    The Plan shall constitute a motion under Bankruptcy Rule 9019 and Section 1123(b)(3) of the Code to approve the BHI Settlement.

7.02    Upon Confirmation, the BHI Settlement shall be deemed approved by the Court as in the best interests of the estate and all creditors and parties in interest.  Under the BHI Settlement, BHI will compromise its Allowed Secured Claim -- which is in excess of $6,300,000 and secured by liens against the Debtor's crude distillation, rail spur, and tank farm facility ("the Project") which the Debtor has previous stipulated, the Court's approval, to be a fully secured valid first priority lien against the Project – for (1) a onetime cash payment of $5,500,000.00 payable within 24 hours of entry of Confirmation, (2) certain releases from the Debtor, its members, principals, and others, and (3) an indemnity from the Debtor, its members, principals, and others with respect to claims related to certain equipment previously procured for or fabricated for the Debtor's project, all as more particularly set forth in **<u>Exhibit "A"</u>** attached hereto and incorporated herein by reference.

7.03    The BHI Settlement is fair and equitable.  The Debtor previously objected to BHI's timely filed proof of claim

(Claim No. 1), and the Debtor lost. On April 11, 2019 the Court overruled the Debtor's objection to BHI's secured claim in its entirety. On April 12, 2019, the Court entered an order granting BHI's motion for summary judgment with respect to BHI's Motion to Determine Amount of BHI's Secured Claim. Given the Debtor's prior Court-approved stipulation that BHI was fully secured by a first and prior lien on the Project and the Court's decision to overrule the Debtor's objection to BHI's Secured Claim, the Debtor now has no chance of successfully disputing or litigating the amount of BHI's Secured Claim.

7.04 Approval of the BHI Settlement satisfies the requirements set forth in *Protective Committee for Indep. Stockholders of TMT Trailer Ferry, Inc., v. Anderson*, 390 U.S. 414, 424 (1968) (the court should consider (1) the probabilities of success should the claim be litigated – now zero percent; (2) the estimated complexity, expense and likely duration of the litigation – now irrelevant since the claim has been adjudicated into a final judgment; (3) the difficulty collecting any judgment – not applicable since the Debtor is the obligor and not the claimant; and (4) all other factors relevant to a full and fair assessment – paying $5,500,000.00 is significantly less than in excess of $6,300,000.00).

## ARTICLE VIII

## Effect of Confirmation, Release and Binding Effect

8.01.    Except for (1) rights which BHI and BHI Releases
(1) as defined in the BHI Settlement have and (2) the duties and
obligations the Debtor and others have to BHI and the BHI
Releases under the BHI Settlement, confirmation of the Plan
shall operate as a discharge of the Debtor from all Claims and
Interests to the extent provided under §1141(d)(2).

8.01.01   Except for (1) rights which BHI and BHI Releases
(1) as defined in the BHI Settlement have and (2) the duties and
obligations the Debtor and others have to BHI and the BHI
Releases under the BHI Settlement, the treatment of Claims and
Interests in the Plan shall be deemed in exchange for and shall
constitute the complete satisfaction and release of all Claims
and Interests of any nature whatsoever against the Debtor or any
of its assets or properties, except where otherwise specifically
provided herein.

8.01.02   Except for (1) rights which BHI and BHI Releases
(1) as defined in the BHI Settlement have and (2) the duties and
obligations the Debtor and others have to BHI and the BHI
Releases under the BHI Settlement, the Plan shall discharge and
satisfy all obligations of or claims against the Debtor or
revested Debtor to the extent provided under §1141(d)(2), and no
Creditor, interest holder or lessor shall have any claim against

Debtor upon confirmation with respect to any KNOWN liability or obligation of the Debtor or the Estate, including, but not limited to:

a)   curing or providing for compliance with regard to any violations by the Debtor of or conflicts with any regulations or licensing requirement, or of any judgment, decree, order, statute, rule or regulation of any court or any public, governmental or regulatory agency or body having jurisdiction over the Debtor;

b)   any unfair labor practices or discrimination claims, complaints or charges filed or threatened against the Debtor;

c)   any and all taxes, whether income, excise, corporate, franchise, property, sales, use, payroll, withholding or otherwise, incurred by or assessed against Debtor prior to the Confirmation Date; and

d)   any and all liability, claims or responsibility in any legal action, administrative proceedings or investigations instituted by or against the Debtor, or the assets thereof, under any law or regulation pertaining to the health or environment including, without limitation, the CERCLA Act of 1980 (42 U.S.C. §9601 et seq.), as amended from time to time, the regulations promulgated thereunder, and statutes or regulations, whether federal, state or local relating to the health or environment.

8.02.    Except for (1) rights which BHI and BHI Releases (1) as defined in the BHI Settlement have and (2) the duties and obligations the Debtor and others have to BHI and the BHI Releases under the BHI Settlement, except as otherwise provided herein, upon the Confirmation Date, all such Claims and Interests against the Debtor shall be satisfied and released in full; and all such holders shall be precluded from asserting against the Debtor, its successors or assigns and its assets or properties, any other or further Claim based upon any act, debt, claim or omission, transaction or other activity of any kind or nature that occurred prior to the Confirmation Date.

8.03.    Upon a Final Order of Confirmation, the provisions of the Plan will bind the Debtor, revested Debtor and all Creditors and interest holders, whether or not they accept the Plan.

8.04.    This Plan is binding in accordance with §1141. The automatic stay provided by §362 will terminate on the Effective Date.

ARTICLE IX

Procedures for Resolving Disputed Claims and Interests

and Disputed Claims Reserve

9.01.    Debtor or any other party in interest, may object to any claim.  All objections to Claims must be filed within one hundred and eighty days (180) days after the Effective Date.

Notwithstanding any other provision in this Plan to the contrary, the Debtor may not object to BHI's Allowed Secured Claim as that has been determined by orders of the Court entered on April 11, 2019 and April 12, 2019 in this case.

9.02.    The objecting party shall litigate to judgment, settle or withdraw objections to disputed Claims and disputed Interests.    All legal fees and expenses of the Debtor incurred in the prosecution of objections to Claims or Interests shall be paid as a Class 4 claim.

9.03.    In determining the amount of the distribution due the holders of Allowed Claims prior to the resolution of all claim disputes, the appropriate Pro Rata calculations pursuant to the Plan shall be made as if all disputed Claims were Allowed Claims in the full amount claimed by the holders thereof; provided however, that the Court may estimate a lesser amount for a Claim holder used in such a Pro Rata calculation or the Trustee and the disputed claim holder may agree upon distribution in an amount less than that claimed.

9.04.    PAOLA SCHROEDER, shall hold in an interest-bearing account, and separately account for, distributions in respect to disputed Claims.

9.05.    At such time as a disputed Claim becomes an Allowed Claim, the distributions reserved for such Allowed Claim shall be released from the Disputed Claims reserve and delivered

to the holder of such Allowed Claim. In the event that, or to the extent that, a disputed Claim is disallowed, the distributions reserved for such claim shall be released from the Disputed Claims reserve for Pro Rata distribution to Allowed Claims upon the next Distribution Date.

9.06. Except as the Court may order otherwise, no payments or distribution shall be made with respect to all or any portion of a disputed Claim unless and until all objections to that Claim have been determined by Final Order. Payments and distributions to each holder of a disputed claim to the extent that it ultimately becomes an Allowed Claim shall be made in accordance with the provisions of the Plan with respect to the Class of Claims in which the respective holder is a member.

## ARTICLE X

### Retention of Jurisdiction

Except as provided herein below, the Court shall retain jurisdiction of this case pursuant to the provisions of Chapter 11 of the Bankruptcy Code, until final allowance or disallowance of all claims, or to resolve all controversies affected by this Plan in respect to the following matters:

10.01. To determine all controversies relating to or concerning the classification, allowance or satisfaction of Claims or Administrative Expenses;

10.02. To determine any and all pending applications for

the rejection or assumption and/or assignment, as the case may be, of executory contracts and unexpired leases to which the Debtor or Revested Debtor are a party or with respect to which the Debtor may be liable, and to determine and, if necessary, to liquidate, any and all Claims arising therefrom;

10.03.    To determine any and all applications, adversary proceedings, and contested or litigated matters properly before the Court, including, without limitation, any proceeding commenced for the purpose of avoiding, recovering or preserving for the benefit of the estate any transfer of property, obligation incurred by the Debtor, lien or setoff;

10.04.    To determine any dispute arising under this Plan and to make such orders as are necessary or appropriate to carry out the provisions of the Plan including to approve or determine controversies concerning closing documentation;

10.05.    To grant extensions of any deadlines set herein;

10.06.    To hear and determine all requests for compensation and/or reimbursement of expenses which may be made after Confirmation;

10.07.    To enforce all release provisions under this Plan;

10.08.    To modify the Plan pursuant to Paragraph 2.05 and the Code; and

10.09.    In addition, and at any time, the Court may make such orders or give such direction as may be appropriate under §1142 of the Code.

Notwithstanding any provision in this Plan or Confirmation Order to the contrary, the Court shall not retain jurisdiction over claims by BHI and any of the BHI Releasees (as defined in the BHI Settlement) for indemnity against the Debtor, its members, and its principals as set forth in Section 10 of the BHI Settlement.

ARTICLE XI

Notices

All notices or demands required or permitted herein shall be deemed to have been duly given and served when made in writing and deposited in the United States mail, first class, in an envelope addressed to the last known address of the notified party, with postage prepaid or when served in accordance with the Court's electronic case filing system.

ARTICLE XII

Discharge of Debtor

Except as provided below, Pursuant to 11 U.S.C. §1141(d)(2) and the rights granted herein, the entry of a final order by the Court confirming this Plan shall operate as a full and complete discharge of the Debtor on all classes of claims.

The consideration received by the Debtor's creditors, as

provided in the Plan, will be in full final satisfaction, release, discharge and cancellation of any and all claims of such creditors against the debtor, pre-confirmation and the release of all liens upon its successful completion of all payments and plan provisions. The claims of the taxing authorities shall be paid, not discharged.

Notwithstanding any provision to the contrary in this Plan, any Disclosure Statement, or the Confirmation Order, this Plan shall not (1) operate to discharge the Debtor if the Debtor fails to pay BHI timely the sum set forth in Paragraph 1 of the BHI Settlement, and (2) operate to discharge the Debtor of its indemnity obligations to BHI and the BHI Releasees (as defined in the BHI Settlement) under Section 10 of the BHI Settlement.

ARTICLE XIII

Final Decree

The Debtor shall file an application for Final Decree no later than six (6) months following confirmation of the Plan.

ARTICLE XIV

Payment to the United States Trustee

In accordance with §1129(a)(12) of the Bankruptcy Code and 28 U.S.C. §1930, the Debtor shall on the Confirmation Date pay all fees then due to the United States Trustee.

## ARTICLE XV

### Post-Petition Reports and Payments to the United States Trustee

After the Confirmation Date, the Debtor shall continue to file quarterly operating reports with the Bankruptcy Court. However, the Debtor and the Reorganized Debtor shall make all post-confirmation payments to the United States Trustee as may be required pursuant to 28 U.S.C. §1930(a)(6), and shall provide to the United States Trustee such financial reports as the United States Trustee may reasonably request, until the Chapter 11 case has been closed by the Bankruptcy Court or converted to another chapter under the Bankruptcy Code.

## ARTICLE XVI

### Vesting of Property of the Estate

Post-confirmation, all property of the Estate will be conditionally vested in the Debtor, as a "reorganized Debtor.

*[Balance of page intentionally blank]*

RESPECTFULLY SUBMITTED this 24th day of May, 2019.


                              /s/Paola Schroeder
                              PAOLA SCHROEDER, Manager of the
                              DEBTOR-IN-POSSESSION




APPROVED AS TO FORM:

WILLIS & WILKINS, L.L.P.
711 Navarro Street, Suite 711
San Antonio, TX 78205-1711
(210) 271-9212  (Telephone)
(210) 271-9389  (Facsimile)
TBC NO. 21486500
Email: jwilkins@stic.net


/s/James S. Wilkins
BY:  JAMES S. WILKINS
     Attorney for Debtor

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that a true and correct copy of the foregoing <u>Plan of Reorganization</u> has been sent to the following by first class U.S. mail, on this 24th day of May 2019:

Rock Springs Energy Group, LLC
2607 Rogers Circle
San Antonio, Texas 782587

United States Trustee
615 E. Houston Street, Suite 533
San Antonio, TX 78205

Regional Director
Securities Exchange Commission
801 Cherry Street, Suite 1900, Unit 18
Fort Worth, Texas 76102

Securities Exchange Commission
100 F. Street, NE
Washington, D.C. 20549

Advanced Magnetronics, LLC
230 West Second
South St.
Salt Lake City, UT 84101

Construcciones E Instalaciones
Modernas S.A. de C.V.l
Av. Sante Fe 505 Mezzsanine 1 col.
Cuajimalpa c.p.
Cuidad de Mexico 05348

DR Griffin & Associates Inc.
1414 Elk St.
Rock Springs, WY 82901

Office of Ivan Ramirez, PLLC
P.O. Box 702086
San Antonio, TX 78270

Samuel Engineering, Inc.
c/o Jeffrey Clay Rubell
Rubell Quillen, LLC
8501 Turnpike Dr., Suite 106
Westminster, CO 80031

Separation Process Systems, LLC
5930 Par Four
Houston, TX 77088

Winn – Marion Companies
7084 S Revere Parkway
Englewood, CO 80112

BH, Inc.
c/o Jason H. Robinson
Babcock Scott & Babcock, PC
370 E. South Temple, 4th Floor
Salt Lake City, UT 84111

/s/James S. Wilkins
JAMES S. WILKINS
Attorney for Debtor